# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CRIMINAL CASE NO. 1:08cv076

| | |
|---|---|
| DARYL M. SWISS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on the Motion to Vacate, Set Aside or Correct Sentence [Doc.1] of Petitioner, which was originally filed as a motion in the cause in the related criminal case of <u>United States v. Daryl M. Swiss</u>, 1:07-cr-006 (the Criminal Case) in which the Petitioner herein was the Defendant. Petitioner moved for an expedited hearing, which the Government did not oppose, and the Court granted such expedited hearing on March 18, 2008.

In the Criminal Case, the Petitioner pled guilty to one count of attempting to evade or defeat his federal income tax liabilities in violation of 26 U.S.C. §7201. Petitioner came on for sentencing on July 18, 2007,

before the Honorable Lacy H. Thornburg, and was sentenced to twelve months incarceration, to be followed by a period of supervised release.

Shortly after reporting to prison on October 24, 2007, Petitioner began complaining of certain symptoms which culminated in his being diagnosed on or about November 21, 2007, with a form of throat cancer. Petitioner has presented evidence, and the Court finds as fact, that the cancer is of such a nature that it was present in Petitioner's throat at the time of his sentencing on July 18, 2007, but that it would not have been detectable at that time.

Based on this diagnosis, Petitioner moves this Court pursuant to 28 U.S.C. §2255 to vacate, set aside or correct his sentence, arguing that this newly discovered evidence of a factor (his cancer) that was unknown at the time of Petitioner's sentencing, but which existed at that time warrants vacating the sentence and re-sentencing the Petitioner.

The thrust of Petitioner's argument is that his cancer is a condition that constitutes "an extraordinary physical impairment" under §5H1.4 of the Sentencing Guidelines, because of which Petitioner would have been eligible for a downward departure in his sentence had the cancer been detected at the time of his sentencing.

Petitioner correctly states that the standard for vacating the Court's sentence because of newly discovered evidence consists of a showing that 1) the evidence was discovered since the sentencing hearing, 2) that the petitioner acted with due diligence in discovering the new evidence, 3) that the evidence pertains to a material issue, rather than being merely cumulative or impeaching, and 4) that "the evidence would probably result of a more favorable sentence," citing United States v. Corson, 2002 U.S. Dist. LEXIS 6410 at *9 (D. Me. 2002) and Tropiano v. United States, 323 F. Supp. 964, 966 ( D. Conn. 1971). See generally, United States v. Lofton, 233 F.3d 313, 318 (4th Cir. 2000).  The Court finds and concludes that the Petitioner has sufficiently proved the first three elements.  The issue in this Motion concerns the fourth element.

Would presentation of the evidence of Petitioner's cancer probably result in a more favorable sentence than the one he received?  That is the question before this Court.

At sentencing, Petitioner was determined to have a Total Offense Level of 19, which carries a Guidelines range of 30 to 37 months.  The Government moved for a downward departure pursuant to §5K1.1 of the Sentencing Guidelines on the grounds that Petitioner had substantially

cooperated with the Government.  The Court allowed a five-level reduction, and also allowed a variance under 28 U.S.C. §3553, resulting in a sentence of twelve months incarceration to be followed by supervised release.  Petitioner argues that with this newly discovered evidence he would also have been eligible for a further departure pursuant to §5H1.4, which reads in pertinent part:

> Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a departure may be warranted.  However, an *extraordinary physical impairment* may be reason to depart downward; e.g. in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

U.S. Sentencing Guidelines, §5H1.4 (emphasis added).

Petitioner argues that his cancer is precisely such a "extraordinary physical impairment."  However, "where the Bureau of Prisons has the ability to provide medical treatment for the defendant's condition, departure under §5H1.4 is generally not appropriate." Griffith v. United States, 2008 WL 544860 (W.D.N.C. 2008) (citing United States v. Persico, 164 F.3d 796, 806 (2d Cir. 1999)).  See also, United States v. Greenwood, 928 F.2d 645, 646 (4th Cir. 1991) (affirming downward departure where defendant's double leg amputation required treatment at the Veterans Administration hospital and "incarceration would jeopardize treatment").  Petitioner,

4

however, argues that he has shown that the Bureau of Prisons is unable to treat his cancer. In fact, Petitioner's counsel strenuously argues that Petitioner's medical treatment is so poor as to "render this a death sentence," and that relief allowing the Petitioner's immediate release is necessary "to save Daryl's life!"

The evidence Petitioner presents shows that the original diagnosing oncologist, Dr. Gillespie, stated that Petitioner's surgery should take place by December 31, 2007, but that the surgery was not conducted until January 18, 2008. Dr. Gillespie stated that he has "concerns that this was excessive delay and may compromise his [Petitioner's] long-term care." [Exhibit 2, Doc.1-4]. Petitioner also presented evidence in the form of an affidavit of Petitioner's counsel reciting medical information "imparted to the Affiant by medical personnel or by the patient [Petitioner] himself" [Doc.2]. The Government did not object to the offering of this Affidavit. Based on that Affidavit, Petitioner argues that his radiation and chemotherapy should have begun within four weeks of his surgery, but that as of six weeks post-surgery that these treatments had not begun, and that Petitioner had been denied certain vitamins and immunity-enhancing drugs. Petitioner also submitted a letter from BOP, however, stating that at least one of these

drugs was denied because it was considered experimental.  For reasons not explained by the Petitioner, neither the timing of the chemotherapy and radiation nor the immunity-enhancing drugs were addressed by Dr. Gillespie.

Even though Petitioner's evidence is troubling, it falls far short of demonstrating that the Bureau of Prisons is unable to provide adequate care for Petitioner's condition.  Dr. Gillespie wrote in his letter that the eighteen-day delay in the surgery "may compromise [Petitioner's] long-term care."  He did not state, however, that allowing such delay is a deviation from the standard of care.  He also did not address the fact that during that eighteen days the Petitioner had a CT Scan and had consulted with an ENT specialist, and whether this sort of preparation may have warranted the delay.  The information presented through counsel's Affidavit tends to show a disagreement between the physicians as to the precise course of treatment, but Petitioner fails to present anything tending to prove that the Bureau of Prisons is *unable* to provide Petitioner proper medical treatment for his condition.[1]

---

[1] If Petitioner's treatment is defective, he may have a remedy under 42 U.S.C. §1997, *et seq*.  In order to vacate his sentence, however, Petitioner must meet a much higher standard.

Petitioner argues that the relatively thin evidence pertaining to the ability of the BOP to address Petitioner's medical needs must be taken in the context of the overall poor quality of medical assistance afforded by the Bureau of Prisons.  In support of this contention Petitioner submitted to the Court an article by a person who defines himself as "a Convict Criminologist (as ex-prisoner who has academic training)," [Exhibit 4 Doc.1-4 at 6 (parenthetical in original)], and who states as the basis of his analysis that "having spent five years imprisoned in Federal Medical Centers (FMC), I have substantive experience with the health care delivery system of the Federal Bureau of Prisons." [Id.] This author describes health care in the Federal prison system as "symbolic," and prefaces his analysis with the statement that "The symbolic health care(less) provided by the FBOP is the focus of the present article." [Id. (parenthetical in original)] The gist of the article is that essentially no actual health care is provided by the Bureau of Prisons for any inmate having any condition.  Even though the article was not presented under oath, and the author was not present for cross examination, the Government did not object to its introduction.  Nonetheless, the article consists of such hyperbole as could be cited in support of excusing from incarceration any defendant in need of medical

care.  As such, it is difficult to view this evidence as supporting Petitioner's specific claim that the Bureau of Prisons is unable to provide proper treatment in Petitioner's particular case.   It is so general as to be of no benefit to Petitioner's argument.  The Court is of the opinion that Petitioner's reliance on this article only serves to underscore the weakness of Petitioner's evidence on this salient point.

Petitioner also argues that even if his evidence may not show that the Petitioner's treatment through BOP is inadequate, there would be a considerable cost savings to the Government by vacating Petitioner's sentence and allowing him to obtain medical treatment outside of prison with the benefit of Petitioner's private health insurance.  In support of this proposition Petitioner sites to the example in §5H1.4 that "in the case of a seriously infirm defendant, home detention may be as efficient as, *and less costly than*, imprisonment." (emphasis added).  In making this argument Petition misreads §5H1.4.  The fact that Petitioner has been of sufficient financial success so as to be able to afford private health insurance does not provide Petitioner any benefit as it relates to sentencing.  In fact, §5H1.10 specifically includes "socio-economic status" among "factors . . . not relevant in the determination of a sentence."  For the Court to hold

otherwise would be to allow any defendant with private health insurance and a medical need to claim entitlement to a more favorable sentence than a defendant who has been unable to afford such insurance.

For these reasons the Court cannot find or conclude that Petitioner would be eligible for a downward departure under §5H1.4 in light of the Petitioner's cancer diagnosis and the treatment available to him through the Bureau of Prisons.

The Court is cognizant of the fact that lack of eligibility for a downward departure would not prevent a sentencing court from applying the 28 U.S.C. §3553 factors and concluding that a lower sentence is appropriate. It does not follow, however, that because a lower sentence is possible that the Petitioner has shown the a lower sentence is probable in light of this newly discovered evidence. The standard Petitioner must meet, however, is that a more favorable sentence is *probable*. The Petitioner has not done so.

It should also be noted that Petitioner was already afforded an extremely lenient sentence in light of the gravity of the crime committed. In his plea agreement, Petitioner stipulated that his tax evasion resulted in a loss to the Government of some $630,000. In light of Petitioner's

cooperation with the Government's investigation, he was sentenced to only twelve months imprisonment. Even if Petitioner were eligible for a downward departure pertaining to his medical condition under §5H1.4, it is not probable that such departure would result in a sentence lower than the already low sentence the Petitioner received.

Based on the foregoing the Court finds and concludes that the Petitioner has failed to prove that he would probably receive a more favorable sentence as a result of his cancer diagnosis and the current level of treatment available to him.

The Court recognizes that Petitioner's diagnosis has been traumatic and that during this treatment period is the time he would least want to be incarcerated. Petitioner's situation elicits much sympathy as well as impassioned pleas from his counsel. For Petitioner to proceed under §2255, however, he must meet a very high standard, and his evidence in this matter has fallen far short of the bar.

**IT IS THEREFORE ORDERED** that the Petitioner's Motion to Vacate, Set Aside or Correct Sentence [Doc.1] is **DENIED**.

Signed: March 20, 2008

Martin Reidinger
United States District Judge